2022 IL App (1st) 191898-U

No. 1-19-1898

Order filed May 12, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 2045 |
| | ) | |
| NEAL BRATCHER, | ) | Honorable |
| | ) | Joan O'Brien, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lamkin and Marin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction of aggravated unlawful use of a weapon is affirmed where a rational trier of fact could find that he constructively possessed the firearm hidden in a door panel of the vehicle that he owned and was driving.

¶ 2    Following a bench trial, defendant Neal Bratcher was found guilty of two counts of aggravated unlawful use of a weapon (AUUW). The court merged the counts and sentenced defendant to one year in prison. On appeal, defendant argues that the State failed to show that he knowingly possessed the weapon that was discovered in his vehicle. We affirm.

¶ 3    Defendant was charged by indictment with multiple offenses arising from an incident on January 9, 2018. Relevant here, the State proceeded on two counts of AUUW, which alleged that defendant carried a firearm on or about his person (count II) or in a vehicle (count III) while he was not at his land, home, or business and was not an invitee elsewhere, and lacked a valid Firearm Owners Identification (FOID) card. See 720 ILCS 5/24-1.6 (a)(1), (a)(3)(C) (West 2018). The State also proceeded on one count of possession of cannabis with intent to deliver (count VI).[1]

¶ 4    Chicago police officer Gainer[2] testified that on January 9, 2018, about 8 p.m., he and his partner, Officer Sam Brienzo, were patrolling around the 9300 block of South University Avenue in Chicago. Gainer observed defendant pulling into a parking space without signaling, exit his vehicle, and immediately reenter his vehicle after seeing the officers. Gainer pulled in front of defendant and another police vehicle pulled behind defendant. Gainer and Brienzo approached and requested defendant to exit the vehicle. Defendant lowered his window a few inches and refused, but eventually complied. Gainer smelled "[f]resh cannabis," and Brienzo recovered a bag with a jar containing several smaller bags of suspect cannabis from behind the driver's seat. The vehicle was "partially" searched and taken to the station.

¶ 5    At the station, Gainer noticed that a panel on the interior of the rear passenger door was loose. By "slightly tugging on it," he could see the barrel of a handgun protruding from the door. Officers recovered and inventoried a loaded Ruger .380-caliber handgun. The suspect cannabis was also inventoried and sent for testing.

---

[1] The State nol-prossed additional counts at the close of its case-in-chief.

[2] Officer Gainer's first name does not appear in the record.

¶ 6      The State played a brief clip from Gainer's body camera, which is included in the record on appeal and depicts him peeling back the outer edge of a panel on the rear passenger door. Gainer and an unidentified officer identify a firearm within the panel. Gainer partially pulls the panel off the door while the unidentified officer retrieves the firearm. Gainer testified that he was able to peel back the panel within 10 seconds.

¶ 7      On cross-examination, Gainer testified that he approached the passenger side of the vehicle, which was occupied, and Brienzo approached the driver's side. Defendant provided his license and insurance information right away, but requested a "white shirt" before he would exit the vehicle. Through the rear driver's side door, Brienzo saw a black bag which contained a mason jar with fresh cannabis. Defendant was arrested based on the recovery of those items. The officers briefly searched the vehicle until they found the narcotics; it was then driven to the station by another officer.

¶ 8      Gainer never saw defendant reach towards the rear passenger door and could not estimate the distance from the driver's seat to the rear passenger door, but stated that "it would be easily accessible within a moment's time without having to leave your seat." The back panel was loose, but Gainer could not say how much it was detached or how the panel was affixed to the vehicle. Defendant told the officers that he did not have a FOID card or a concealed carry card. Gainer testified that the firearm was also sent for testing, but he never learned the results of any tests on the firearm.

¶ 9      On redirect examination, Gainer testified that the firearm was in an "area of the vehicle [that] could be reached [by the driver] without having to change your seated location," but "just by exerting yourself slightly" and reaching back in a diagonal direction.

¶ 10     On re-cross examination, Gainer testified that he only checked the door from an open position. Gainer never searched the vehicle from the inside and was unable to say if the panel was accessible if the door were closed.

¶ 11     The State entered stipulations that (1) if called, a forensic scientist would testify that several bags recovered from the vehicle contained a substance that tested positive for cannabis, and (2) defendant did not have a valid FOID card at the time of the incident. The State also entered into evidence records from the Secretary of State which indicated that defendant owned the vehicle, a Jeep Liberty, on January 9, 2018.

¶ 12     After closing arguments, the trial court found defendant guilty of both counts of AUUW and acquitted him of possession of cannabis with intent to deliver. The court acknowledged that defendant's behavior after parking "could be related to the gun or to the cannabis that's in the car." But, the court discounted that the passenger could be guilty as the passenger did not own the vehicle. Instead, the most compelling evidence was that the panel was already detached from the door when officers searched the vehicle and the firearm was accessible from the driver's seat. Defendant filed a motion for a new trial, which was denied.

¶ 13     Following a hearing, the court merged the counts of AUUW into count II and sentenced defendant to one year in prison; no motion to reconsider sentence was filed.

¶ 14     On appeal, defendant argues that the State never established that he "knowingly" possessed the firearm beyond a reasonable doubt, and only showed that he owned and drove the vehicle at the time of his arrest.

¶ 15     The State responds that defendant's control over the vehicle supports an inference of knowledge of the presence of contraband, which combined with his suspicious behavior, is

sufficient to prove possession.

¶ 16   In considering a challenge to the sufficiency of the evidence, this court examines " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Davison*, 233 Ill. 2d 30, 43 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for weighing the evidence and credibility of witnesses and resolving any inconsistencies in testimony, and the reviewing court will not substitute its judgment on these issues. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009). A criminal conviction will not be overturned "unless the evidence is so unreasonable, improbable or unsatisfactory that it raises a reasonable doubt of defendant's guilt." *People v. Evans*, 209 Ill. 2d 194, 209 (2004).

¶ 17   "The testimony of a single witness is sufficient to convict if the testimony is positive and credible." *People v. Gray*, 2017 IL 120958, ¶ 36. Moreover, a court "is not required to search out all possible explanations consistent with innocence or be satisfied beyond a reasonable doubt as to each link in the chain of circumstances." *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007). This court will draw all reasonable inferences in favor of the State. *Davison*, 233 Ill. 2d at 43.

¶ 18   To sustain a conviction for AUUW as charged, the State was required to show that defendant possessed a firearm while not at his land, home, or business, was not an invitee elsewhere, and lacked a valid FOID card. See 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2018). Defendant only challenges whether the State proved that he knew that the recovered firearm was in his vehicle.

¶ 19    Possession of contraband may be actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). To establish constructive possession of a firearm, the State must prove that the defendant (1) knew the firearm was present and (2) exercised immediate and exclusive control over the area in which the weapon was found. *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 22. Possession of a firearm in a vehicle may be jointly held by the owner-driver and other passengers. See *People v. McIntyre*, 2011 IL App (2d) 100889, ¶ 17. But, even where joint possession exists, the evidence must support a conclusion that the defendant had control, or the ability to exercise control, over the contraband. See *id*. Constructive possession is often proved through entirely circumstantial evidence. *People v. Wright*, 2013 IL App (1st) 111803, ¶ 25.

¶ 20    A defendant's regular and ongoing control over a vehicle may support the inference that he knows of contraband in the vehicle. *People v. Hampton*, 358 Ill. App. 3d 1029, 1032 (2005) (addressing evidence that the defendant knew of a firearm in a vehicle's glove compartment). In turn, regular and ongoing control over a vehicle might be established through proof that the defendant owns or regularly drives the vehicle. *Id.* However, the fact that a defendant is driving a vehicle at the time it is stopped by police is insufficient on its own to establish knowledge of a weapon in the vehicle. *Id.* at 1031-33. Instead, knowledge can be established by examining (1) the visibility of the weapon from the defendant's location, (2) the amount of time the defendant had an opportunity to observe the weapon, (3) gestures or movements that would suggest the defendant's attempts to retrieve or conceal the weapon, and (4) the size of the weapon. *People v. Bailey*, 333 Ill. App 3d 888, 892 (2002). The defendant's knowledge may also be demonstrated by his statements or conduct upon encountering the police. *People v. Spencer*, 2012 IL App (1st)

102094, ¶¶ 17-18. In determining whether the State carried its burden, the trier of fact may rely on reasonable inferences from the evidence. *Id.* ¶ 17.

¶ 21 Taking the facts in a light most favorable to the State as we must, the evidence shows that defendant unlawfully possessed a weapon. Defendant does not dispute that he owned the vehicle where the firearm was found behind a door panel. He retreated to his vehicle upon seeing police, only opened his window a few inches, and while he spoke to police and gave them his information, he also refused to exit the vehicle until a sergeant was called. The trial court acknowledged this behavior "could be related to the gun or to the cannabis that's in the car." However, the trial court found Gainer's evidence regarding the accessibility of the firearm, specifically defendant's ability to reach it from the driver's seat, compelling. Together, these facts could lead a rational trier of fact to infer that defendant had knowledge and control of the firearm.

¶ 22 Defendant argues that the State failed to show knowledge where the length of time defendant was in the driver's seat before he exited the vehicle was unknown, Gainer did not see defendant make furtive gestures or reach into the back seat, and the firearm was not visible until Gainer detached the panel. Additionally, no testimony established that the firearm was visible from the front seat of the vehicle, and it may have been left by a passenger or previous owner of the vehicle. No forensic evidence connected defendant to the weapon and no testimony was presented regarding the size of the weapon, though footage viewed at trial shows that it was a small firearm.

¶ 23 However, " 'the trier of fact is not required to disregard inferences which flow normally from the evidence and to search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt.' " *Wheeler*, 226 Ill. 2d at 117 (quoting *People v. Hall,* 194 Ill.2d 305, 332 (2000)). Taking Gainer's testimony as true the trier of fact could find the elements

of the offense beyond a reasonable doubt. *Gray*, 2017 IL 120958, ¶ 36. The trial court stated that it found Gainer's testimony regarding the accessibility of the firearm compelling; this, coupled with defendant's behavior upon encountering the police, could suffice for a rational trier of fact to infer that defendant knew the firearm was in his vehicle. See *Wheeler*, 226 Ill. 2d at 117 (the court was not required to "search out all possible explanations consistent with innocence"). Consequently, we will not disturb the judgment of the trial court.

¶ 24    For the foregoing reasons we affirm the judgment of the circuit court.

¶ 25    Affirmed.